Brevard, J.
The motion for the reversal of the order of the district court in this ease has been placed on various grounds. I will consider and dispose of the objections to the order of the 1 ° , . district court in question* in the course in which they are exhibited in the brief. The first is, that the Senate proceeded unconstitutionally against the appellant by impeachment, and that their judgment of removal from office is illegal and void. In support of this position, it has been contended, that the only constitutional and legal mode of proceeding J oro against a clerk of a district court for misbehaviour, . , . „ . . _ . , m order to remove him from lus office; is by an act of the governor of the state, after conviction, by a petit jury, as in other cases of misdemeanor; and an act of 1789 was relied upon, as also the 7th article of the state constitution. The act of Assembly, of 1789, declares, “ that in case any of the clerks i( shall be guilty of mal-practice in the execution of 1 ... 6i his trust, the governor and commander in chief ic for the time being, shall and may suspend and ii remove such clerk for such mal-practice; and {< such clerk, with his securities, shall be liable to <e all damages sustained by any person or persons i( in consequence of the mal-practice committed by ee such clerk.”
*714 It might be questioned whether? under and by virtue of this act, the governor was not empowered to suspend or remove a clerk, upon his own enquiry and in his own discretion, without the intervention of, or any previous trial by, a jury; and it might further be questioned, whether acts of misbehavior, other than those which would properly fall under the meaning of the word e{ mal-practice,” might not be the subject of impeachment, even if it should be admitted that the act of Assembly in question is still in force, and may be carried into execution, ■ notwithstanding the state constitution of 1790, But I think it unnecessary to discuss these questions, as I am of opinion that the part of the act of Assembly of 1789 relied on, has been wholly superseded and repealed by the constitution, which declares that all civil officers shall be liable to impeachment for any misdemeanor in office,” Where the object of the prosecution is to punish the public officer as such, and remove and disqualify him, it must, as I think, be carried on by impeachment, and not otherwise ; for the constitution, by declaring that ii judgment in such cases shall not extend u further than to the removal from office, and dis-u qualification to hold any office of honour, trust or “ profit under this state;” and by providing that the party convicted shall nevertheless be liable to indictment, trial, judgment and punishment according to law, it seems to me to have intended to subject public officers (for trial and punishment, with a view solely to the public welfare, by removing them from office, or by suspending or disqualifying them) to the great tribunal, provided by that instrument *715 for the trial of im peachmerts, and to no other. It is not pretended that there is any other which is authorised to disqualify state delinquents from holding offices of trust or profit; “ all the civil officers/’ (which is the phrase of the constitution) must be understood to mean all public officers; holding civil offices of any grade of honour, trust, or profit under this state. If the purpose of the prosecution is to punish them officially, or for any misdemeanor in office, or remove them from office, or disqualify them from holding offices of honour, trust and profit, and not merely to punish them as criminal offenders in the ordinary course of justice, the party must be proceeded against by impeachment, and in no other mode; at all events, he maybe so proceeded against, although he may be liable to other modes of prosecution.
The seventh article of the state constitution, in my judgment, does not at ail militate with this doctrine. If that article were to receive the construction, which has been contended for, the constitution, of which it is a part, would be in a great degree a dead letter, for it contains numerous provisions totaliy inconsistent with the then existing laws. The true construction of that article seems to me to be this, that u all laws then of force, not inconsistent with the true meaning and reasonable operation and effect of the constitution then established, should continue,” &c.
It might be said, that such a provision was unne *716 cessary; but it is clear to me, that the convention thought otherwise; for, on the same principle, pro-' vision is made in the preceding article for the an-pointment of all officers (other than such as are specially mentioned) in the manner they had been theretofore appointed, until otherwise directed by law, and in all events, it was a wise precautionary measure to avoid cavil and dispute.
I am not by any means satisfied, that the second ground taken by the appellant, is founded in fact, namely, “ that the trial by jury was the mode of trial observed in the removal of clerks from office anterior to the constitution.” But, admitting the fact, it will not follow that the construction I have given to the third section of the fifth article, is repugnant to, or inconsistent with the sixth section of the ninth article for the préservation of the trial by jury. The trial by jury as heretofore used, is no ways inconsistent with the trial of impeachments for state delinquency and misbehavior in office, where the object is to punish for official neglect or abuse, and remove the officer as a public nuisance. Besides, so far from considering the trial by impeachment as oppressive, it appears to me a great constitutional privilege, an honourable distinction in fa-, vour of distinguished citizens, invested with civil employments and places of public trust and emolument, by the choice or appointment of the people or' their public functionaries; and the rights of the accused on such trials are cautiously guarded and greatly favoured. The House of Representatives *717 have the sole power of impeaching, and the Senate the sole power of judging. A concurrence oí two thirds of the first branch of the Legislature is ne-eessary to an impeachment; and a like concurrence of the members present of the Senate, is necessary to convict; and the Senate may be considered as a select grand jury, men of experience and tried wisdom, and of the first respectability in the state, acting under the solemn sanction of an oath or affirmation, as in the usual course of criminal proceedings in courts of justice.
The third ground taken for the appellant, viz, that he had a freehold in his office, and could be deprived of it only by the judgment of his peers, This appears to me as destitute of foundation as the rest. The second section of the ninth article of the constitution, which is relied on, is not in my opinion in any respect infringed by the judgment of the Senate. Even if it should be admitted that the appellant had a freehold in his office, (which, however, may well be disputed,) this article of the constitution may stand without any repugnancy with the construction I contend for, relative to the right of impeachment. The whole instrument (the constitution of this state,) must be taken together in giving a construction to any part of it; and it should be so construed that every part of it may have effect as far as possible, consistently with its true spirit, and the nature of the government it was intended to establish. The observations already made, in relation to the second ground, apply also to this.
*718 The only answer which I shall make to the fourth ground is, that it is not for this court to rectify, or condemn the proceedings and judgment of the high court of impeachment; the constitution has given no such power, and, moreover, I think it disrespectful to that great and independent tribunal, to suffer its proceedings and judgments to be criticised and censured in the manner' it was on the argument of this case.
The fifth ground, viz ; that the offence of which he was convicted, was committed more than six months before prosecution, cannot, in my opinion, be maintained. It is not a case within the spirit and meaning of the act of Assembly of 1748, limiting the time for commenceing prosecutions for forfeitures; the act has no application to trials by impeachment, or causes of prosecution by impeachment; and if it had, it was pleadable on the trial before the Senate.
The objection, that even if Dr. O’Driscoll had been legally elected, Mr. Campbell has no right to the office, because he was not elected by joint ballot of the Legislature, or appointed by the presiding judge, but commissioned by the governor, without any just authority, is incapable of giving any support to the motion. The act of Assembly, for 1812, provides for the election of clerks of the courts, after the expiration of every four years ; but the present incumbents, when the act passed, were not to go out of office till the first of December, *719 1816 the vacancy which happened was to he filled up in the same manner. It would have been proper to have filled it in case the act of 1812 had never been passed. Indeed, the act of 1812 makes • • „ . -it i no provisions for filling vacancies : it declares that the officers elected should hold their offices until others be elected ; but, if those elected are removed, or should die, &c. the vacancy thereby occasioned must, it is presumed, be filled as was provided by law, prior to 1812. An act of 1799 directs, that the governor shall appoint, as clerks, such persons as shall be recommended by a majority of the members of the Legislature, representing the several districts, &c. if such recommendation can be obtained; and, if not, the governor may appoint at his pleasure. It is presumed that the appointment of Campbell was in conformity with these provisions. My opinion is that the motion ought not to be granted.
Justices Colcock, Smith, and Gkimke concurred.